IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

WILLIAM BRYAN,
        Plaintiff,

v.                                      Civil Action No. 3:24cv774

MICHAEL BROOKS, et al.
        Defendants.

## OPINION

From 2019 to the present, William Bryan, an inmate within the Virginia Department of Corrections ("VADOC"), has suffered from pain in his left shoulder, left elbow, and his spine. Bryan now sues prison warden, Beth Cabell,[1] for a perceived lack of medical care at Sussex II State Prison ("Sussex II") for his pre-existing injuries. Specifically, Bryan asserts that Cabell acted with negligence (Count III) and gross negligence (Count IV). Cabell moved to dismiss the complaint for failure to state a claim. Because Bryan fails to plausibly allege a cause of action against Cabell, the Court will grant the motion to dismiss.

### I. FACTS ALLEGED IN THE COMPLAINT

Bryan suffered injuries to his left shoulder and left elbow following a mental health incident while housed at Rappahannock Regional Jail in June 2019. VADOC transferred Bryan to Nottaway Correctional Center ("Nottaway") where Bryan repeatedly requested to see the prison

---

[1] Bryan has also sued defendant Dr. Michael Brooks for violating the Eighth Amendment in violation of 42 U.S.C. § 1983 (Count I) and for medical malpractice (Count II). On December 5, 2024, Cabell filed a suggestion of death notifying the Court and the parties that Brooks died on September 28, 2024. The Court acknowledged Cabell's suggestion of death on December 9, 2024, and directed Bryan to inform the Court how he planned to proceed in light of Brooks's death. The parties are still determining the proper administrator to represent Brooks's estate for purposes of this lawsuit. Because Brooks's estate has not yet been served with process, this Opinion only addresses Cabell's motion to dismiss.

1

doctor to address his injuries. A doctor at that facility did not see Bryan until February 2021. Once seen, the Nottoway doctor conducted an X-ray and concluded that Bryan had arthritis in his shoulder. The doctor did not order an MRI. During that same month, after receiving the X-ray, VADOC transferred Bryan from Nottoway to Sussex II. Cabell was the lead warden at Sussex II.

### A. Shoulder Injury

Although Bryan arrived at Sussex II in February 2021, a doctor did not see Bryan for his shoulder injury until April 2022 when VADOC authorized Bryan to visit a specialist from OrthoVirginia, Dr. Nedeff. After performing an X-ray on Bryan's shoulder, Dr. Nedeff believed that Bryan needed an MRI, which he conducted on April 29, 2022. On June 22, 2022, Dr. Nedeff told Bryan that the MRI revealed that Bryan's shoulder was dislocated and had a SLAP II[2] tear and arthritis. Dr. Nedeff prescribed cortisone injections, and Bryan received an injection that day.

Following that visit, Bryan requested to see the medical team at Sussex II several times to receive another cortisone injection, but no one responded to his request. Once Bryan did see Brooks, the resident doctor and medical director at Sussex II, Brooks was not "supportive of additional treatment." (ECF No. 1, at 5.) Bryan did not receive any other attention for his shoulder before VADOC transferred Bryan to River North Correctional Center ("River North") on November 2, 2023.

### B. Elbow Injury

On March 15, 2022, approximately a year after Bryan transferred to Sussex II, Bryan saw Dr. Stuart of OrthoVirginia for his elbow. Dr. Stuart ordered an X-ray of Bryan's elbow but could not determine the issue. Dr. Stuart did not conduct an MRI. He ultimately recommended that

---

[2] A SLAP II tear refers to a "Superior Labrum, Anterior to Posterior tear" where the "labrum and bicep tendon are torn from the shoulder socket." (ECF No. 1, at 4 n.1 (quoting Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/21717-slap-tear).)

2

Bryan use a "rigid plastic brace for approximately six weeks to see if that would cause improvement." (*Id.* at 6.) Dr. Stuart provided Bryan with an elastic brace to take with him but gave instructions to Bryan to tell the Sussex II medical team that he needed a rigid plastic brace. Upon arriving back at Sussex II, the jail staff confiscated Bryan's elastic brace and did not return it. Brooks then gave Bryan a rubber brace for his elbow in lieu of a plastic brace.

On June 22, 2022, during an appointment with Dr. Nedeff for his shoulder injury at OrthoVirginia, Bryan learned that he had missed two follow-up appointments with Dr. Stuart for his elbow. Bryan tried to talk with Sussex II medical staff about these missed appointments, but the medical staff either ignored Bryan or told him that he already had his visit.[3] Bryan continued to complain of pain in his elbow, but he did not see Dr. Stuart again and did not receive an MRI for his elbow. The medical staff at Sussex II additionally never gave Bryan a plastic brace, in contravention of Dr. Stuart's recommendation.

### *C. Spine Injury*

Bryan also suffered, and continues to suffer from, pain in his spine. Prior to any treatment on Bryan's shoulder or elbow, a doctor at Sussex II conducted an MRI of Bryan's spine in March or April of 2021, soon after Bryan arrived at Sussex II. That doctor, however, did not address the shoulder or elbow injuries. On September 7, 2021, Dr. Gocke of OrthoVirginia operated on part of Bryan's spine, but did not have the expertise to operate on the C8-T1 area of the spine. When Bryan visited Dr. Gocke on March 3, 2022, he told Dr. Gocke that he still had pain in the C8-T1 area, but Dr. Gocke indicated that he could not assist with that. After Bryan returned to Sussex II, he informed Brooks that he suffered pain in the C8-T1 area of his spine. Brooks told Bryan that

---

[3] Though unclear, presumably Bryan means that the Sussex II medical staff told him that he already had his visit with Dr. Stuart.

Bryan could have pain medication but that he could not receive additional surgery. From that conversation, Bryan believed that nothing more could be done for his spine. Still, Bryan "made numerous complaints" to the medical staff at Sussex II so that he could see a doctor regarding the C8-T1 area of his spine, but received no response. (*Id.* at 7.) Bryan later learned after his transfer to River North that he could receive surgery for the C8-T1 area of his spine.

### *D. River North Treatment*

In April 2024, once VADOC transferred Bryan to River North, Bryan saw a specialist at OrthoVirginia for all of his aforementioned maladies. That doctor "expressed surprise" that Bryan suffered with these issues for so long, gave Bryan a cortisone injection in his elbow, and ordered a new MRI on his shoulder. (*Id.* at 8.) The doctor could not help Bryan with his spine.

## II. ANALYSIS[4]

At the outset, the Court notes that Bryan does not allege a single specific fact concerning how Cabell acted with negligence or gross negligence regarding Bryan's medical care at Sussex II. In his statement of the claim, Bryan makes conclusory statements about Cabell's alleged negligence and gross negligence.[5] But he does not mention Cabell once in his factual allegations

---

[4] A motion under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint without resolving any factual discrepancies or testing the merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a claim to relief that is plausible on its face. *Id.* "A claim has facial plausibility if the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[5] Asserting negligence, Bryan states that "Cabell was negligent in many ways" for example, in her "failure to provide a correctional facility with adequate medical care, fail[ure] to provide a facility that provides inmates with an actual and legitimate way to seek review of an inmates[']

4

and only responds in his opposition brief that the Court may "draw the *reasonable inference*" from his allegations that Cabell committed negligence and gross negligence. (ECF No. 16, at 8 (quoting *Iqbal*, 556 U.S. at 678).)

"Negligence in Virginia requires four elements: (1) the defendant must have a duty of care that (2) it breached, and for the breach to have (3) proximately caused an (4) injury to the plaintiff." *Brown v. Wal-Mart Stores East, LP*, No. 24-1102, --- F.4th ---, 2025 WL 1571824, at *3 (4th Cir. 2025). Gross negligence constitutes a higher degree of negligence "showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person." *Commonwealth v. Giddens*, 295 Va. 607, 613, 816 S.E.2d 290, 294 (2018) (quoting *Cowan v. Hospice Support Care, Inc.*, 268 Va. 482, 487, 603 S.E.2d 916, 918 (2004)). Even if the Court found that Bryan's factual allegations demonstrate through reasonable inference that Cabell had a duty to Bryan, reasonable inference does not establish plausible breach or proximate cause. No facts illustrate that Cabell personally knew about Bryan or his maladies.[6] Similarly, Bryan's gross negligence claim fails for the same reason.

Because Bryan does not assert facts showing how Cabell acted with negligence or gross negligence, Bryan's "complaint [] fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading." *Lampkin-Asam v. Volusia County Sch. Bd.*, 261 F.

---

grievances and complaints regarding the lack of medical care, and fail[ure] to address Plaintiff's injuries and lack of medical care." (ECF No. 1, at 11.) For his claim of gross negligence, Bryan merely states that "Cabell took actions which show[] indifference to others as constitutes an utter disregard of prudence." (*Id.*)

[6] Cabell also asserts that she cannot be held liable under a theory of negligent supervision because "Virginia does not recognize a cause of action for negligent supervision." *Riddick v. Watson*, 503 F. Supp. 3d 399, 431 n.26 (E.D. Va. 2020); *see A.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 630, 831 S.E.2d 460, 475 (Va. 2019). While Bryan claims that an exception to the negligent supervision rule exists, he argues that negligent supervision does not apply to Cabell anyway. Because Bryan does not assert a negligent supervision claim, the Court declines to analyze that argument.

5

App'x 274, 277 (11th Cir. 2008); *see also Mao v. Glob. Tr. Mgmt., LLC*, No. 4:21cv65, 2022 WL 989012, at *2 (E.D. Va. Mar. 31, 2022). "Pleadings of this nature are prohibited by Rule 8(a)(2), which requires . . . 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Lampkin-Asam,* 261 F. App'x at 277 (quoting Fed. R. Civ. P. 8(a)(2)). Here, Bryan's conclusory allegations about Cabell, without facts of how she acted with negligence or gross negligence, fail to meet the pleading standard at this stage. The Court, therefore, will dismiss all claims against Cabell.

### III. CONCLUSION

Because Bryan does not plausibly allege that Cabell acted with negligence or gross negligence, the Court will grant Cabell's motion to dismiss with prejudice. (ECF No. 12.)

The Court will enter an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 16 Jul 2025
Richmond, VA

/s/ _____
John A. Gibney, Jr.
Senior United States District Judge